John and Peta **BAIN**, Individually, and on Behalf of Scott Bain, Deceased, Plaintiffs,

v.

**HONEYWELL INTERNATIONAL, INC.**, Defendant.

No.. 1:01–CV–412.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 17, 2002.

Martin White Dies, Attorney at Law, Orange, TX, Michael David Sydow, Rick A

Eckerson, Sydow Kormanik Carrigan & Eckerson, Houston, TX, for Plaintiffs.

William Lee Maynard, Beirne Maynard & Parsons, Houston, TX, Clark Reed Nichols, Perkins Coie, Seattle, WA, Richard T Stilwell, Jenifer King Points, Fulbright & Jaworski, Houston, TX, for Defendant.

*ORDER **GRANTING** HONEYWELL INTERNATIONAL INC.'S MOTION TO APPLY THE LAW OF BRITISH COLUMBIA, **DENYING** PLAINTIFFS' MOTION FOR APPLICATION OF TEXAS AND ALBERTA LAW, AND **GRANTING** PLAINTIFFS' REQUEST FOR EXTENSION OF TIME TO RESPOND TO HONEYWELL INTERNATIONAL INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

SCHELL, District Judge.

Both the Defendant and Plaintiffs filed choice of law motions, therefore in the interest of judicial economy, the court is consolidating the following motions:

1. "Plaintiffs' Motion for Application of Texas and Alberta Law," filed on July 31, 2002 (Dkt # 34). Defendant Honeywell International Inc. ("Honeywell") filed a Response on August 15, 2002 (Dkt # 36). Plaintiffs John and Peta Bain ("Plaintiffs") filed a Reply on August 23, 2002 (Dkt # 41). Honeywell then filed a Sur–Reply on August 28, 2002 (Dkt # 44).

2. "Honeywell International Inc.'s Motion to Apply the Law of British Columbia and for Partial Summary Judgment," filed on July 31, 2002 (Dkt # 33). Plaintiffs filed a Response on August 15, 2002 (Dkt # 37). Honeywell then filed a Reply on August 20, 2002 (Dkt # 39).

Upon consideration of the parties' written submissions and applicable law, the court is of the opinion that Honeywell's

motion to apply the law of British Columbia should be GRANTED, Plaintiffs' motion for application of Texas and Alberta law should be DENIED, and Plaintiffs' request for extension of time to respond to Honeywell's motion for partial summary judgment should be GRANTED.[1]

## I. BACKGROUND

Scott Bain ("Bain") was an Australian citizen that lived and worked in Australia until February 2000. In February of 2000, Bain moved to Alberta, Canada and began taking helicopter flight training lessons. When Bain completed his flight training lessons in Alberta, he moved to British Columbia where he was employed by Bailey Helicopter, Ltd. ("Bailey"). On June 1, 2000, Bain was killed in a helicopter accident near Helmet, British Columbia, Canada. His parents, John and Peta Bain, filed this civil action asserting survival and wrongful death claims against Honeywell on May 31, 2001 in the 128th Judicial District Court of Orange County, Texas. Plaintiffs allege that the helicopter accident was caused by the fracture of defective retaining screws on the fuel control unit, which caused the unit to leak fuel into the engine compartment and the engine to lose power.

Specifically, Plaintiffs allege that Honeywell is liable for Bain's death based on "negligence in the repair and/or overhaul of the Helicopter's fuel control unit, installing defective and/or unsuitable screws during the repair and/or overhaul of the

Helicopter's fuel control unit and/or poor quality control [and] ... [a]s a result of Honeywell's negligence, the Helicopter's fuel control unit leaked fuel and was a proximate cause of the Helicopter's severe loss of power, the crash and Scott Bain's death." Honeywell's Notice of Removal, Exhibit B (Original Petition) at 3.

## II. ANALYSIS

### A. Legal Standard for Resolving Choice of Law Issues

Both parties agree that the court must apply Texas law to resolve any conflict of law issues. Texas has adopted the Restatement's "most significant relationship test" to determine the proper law to apply. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145. Application of the "most significant relationship" test does not turn on "the number of contacts with one state, but more importantly on the qualitative nature of those contacts as affected by the policy factors set out in section 6 of the Restatement." *Crisman v. Cooper Indus.*, 748 S.W.2d 273, 276 (Tex. App.-Dallas 1988, writ denied) (citing *Gutierrez*, 583 S.W.2d at 319).

Section 6 of the Restatement states:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

---

1. Both parties agree that the substantive law of British Columbia conflicts with the substantive law of Texas regarding the Plaintiffs' causes of action, Honeywell's Mot. to Appl. Law of British Columbia at 6; Pl.s' Response to Mot. to Appl. Law of British Columbia at 6, and therefore, since the court finds that British Columbia law should apply to the issues in this case, it trumps Texas law (the forum state). The court will grant Plaintiffs' request for additional time so that Plaintiffs may research the application of British Columbia law to Honeywell's motion for partial summary judgment. Specifically, the Plaintiffs must research and brief whether British Columbia law precludes them from recovering for: (1) John and Peta Bains' claims for non-economic losses, including mental anguish and loss of companionship and society, (2) John and Peta Bains' and the estate's claims for loss of decedent's future earnings, and (3) the estate's claims for the decedent's pain and suffering.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include,

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. Section 145 lists the factual matters to be considered when applying the Section 6 principles to a given case:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

The "most significant relationship" test applies to each issue in the lawsuit. Therefore, it is necessary for the court to analyze liability and damages separately. *Id.* at § 145(1) ("[t]he rights and liabilities of the parties *with respect to an issue in tort* are determined by the local law ... which ... has the most significant relationship to the occurrence and the parties ....") (emphasis added).

*B. Liability Issues*

In considering the first contact of the section 145 analysis, it is undisputed that Scott Bain's death occurred in British Columbia.

Concerning the second contact, Plaintiffs contend the conduct allegedly causing the injury is the "install[ation of] the defective and/or unairworthy screw in the helicopter's fuel control unit" at the Defendant's California maintenance facility. Pl.s' Mot. for Appl. of Tex. and Alberta Law at 2. However, Honeywell counters that "no one was injured in California" and the "allegedly-defective screw was not designed or manufactured in California." Honeywell's Resp. to Mot. for Appl. of Tex. and Alberta Law at 4.[2] Moreover, Honeywell contends that the allegedly-defective screw could have been installed in any one of the helicopter's maintenance overhauls and that there is no evidence to support the conclusion that the California overhaul is, in fact, where the screw was installed. *Id.* at 5. Ultimately, Honeywell "strongly disagree[s] whether the allegedly-defective

---

**2.** Honeywell further contends that California has no "significant relationship" because (1) the allegedly-defective screw did not enter the stream of commerce in California, (2) the

product was never sold or used in California, and (3) Honeywell is not a California company. *Id.*

screw did, in fact, cause the accident," and proposes that British Columbia is where the alleged conduct occurred because "it is undisputed that the accident helicopter was maintained and operated in British Columbia." *Id.* at 5–6. If there were a defective screw, "the mere design or manufacture of a defective product is not actionable ... [t]o invoke the doctrine of strict liability in tort, the product producing injury or damages must enter the stream of commerce." *Crisman,* 748 S.W.2d at 277 (citing *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex. 1978)).

The court can find no definitive evidence pointing to *where* the allegedly-defective screw entered the stream of commerce. The Plaintiffs have offered an FAA repair form which states that work was done to the helicopter's "fuel control" system in California. Pl.s' Mot. for Appl. of Tex. and Alberta Law, Exhibit B. However, as Honeywell points out, repairs were subsequently done to the helicopter's "fuel control" system in Winnipeg, Canada as well and there is no way of determining at which overhaul the allegedly-defective screw was installed. Honeywell's Mot. to Appl. Law of British Columbia, Exhibit 3 (Affidavit of David W. Dodson) at 5. Therefore, the court would engage in pure speculation by concluding, as the Plaintiffs do, that the allegedly-defective screw was installed in California. Because of the lack of definitive evidence, the court finds it difficult to apply this contact under section 145.

The third contact to be taken into account, the domicile, residence and nationality of the parties, is partially in dispute. It is undisputed that John and Peta Bain are domiciled in the Australian Capital Territory ("ACT") and that Honeywell is domiciled in Texas. However, the domicile of Scott Bain is contested. The Plaintiffs argue that Bain's domicile at the time of the accident was Alberta because "[Bain] moved from Australia to Alberta, went to flight school in Alberta, lived in Alberta, and he opened and maintained a bank account in Alberta." Pl.s' Mot. for Appl. of Tex. and Alberta Law at 4; Pl.s' Reply to Honeywell's Resp. to Mot. for Appl. of Tex. and Alberta Law, Exhibit A at 1 (Affidavit of John Bain) ("Scott moved to Edmonton and established a home there... [h]e also opened up a bank account in Alberta ... [Scott] liked Alberta and had no immediate plans to return to Australia"). According to Honeywell, Bain's domicile at the time of his death was British Columbia, or alternatively the ACT. Honeywell points out that at the time of the accident Bain lived and worked in British Columbia. Honeywell's Resp. to Mot. for Appl. of Tex. and Alberta Law at 3. Alternatively, Honeywell contends that Bain's domicile was the ACT because, among other things, (1) he declared himself to be an Australian citizen and British Columbia resident on his application for a commercial pilot's license, (2) he declared ACT his permanent address on his employment records with Bailey in British Columbia, (3) he was still registered to vote in the ACT, and (4) he did not apply for permanent residency in Canada. *Id.* at 8–9.

 Under Texas law, a "domicile" is defined as (1) an actual residence that is (2) intended to be a permanent home. *Snyder v. Pitts,* 150 Tex. 407, 241 S.W.2d 136, 139 (1951). The Texas Supreme Court has construed "home" as meaning a "'true fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Id.* (citing *Ex Parte Blumer,* 27 Tex. 734 (1865)). In applying this definition, it is clear to the court that Alberta was not Bain's domicile at the time of the accident. At the time of the acci-

dent, Bain did not have a residence in Alberta. The affidavit of Scott Bain's father, John Bain, merely states, *inter alia*, that Scott moved to Alberta to advance his career and that he "liked" Alberta. Pl.s' Reply to Honeywell's Resp. to Mot. for Appl. of Tex. and Alberta Law, Exhibit A at 1 (Affidavit of John Bain). There is no evidence that Alberta held any special significance to Bain. In fact, according to the Plaintiffs' own affidavit Bain moved to Alberta only to *advance his career*, and it appears to the court that he only lived there one month and once British Columbia offered a better opportunity for career advancement Bain promptly left Alberta. There is no definitive evidence showing that, even though he moved to British Columbia, Bain intended to return to Alberta.[3] John Bain's affidavit, however, does assert that Bain *did not* intend to return to ACT in the near future, thus, casting doubt on whether ACT remained Scott Bain's domicile at the time of his death. *Id.* There is evidence to support a conclusion that British Columbia was Bain's domicile because at the time of his death he was employed there, he had a residence there, and, according to Plaintiffs, had no immediate plans to return to

ACT. On the other hand, Bain was not a citizen of British Columbia and was not attempting to become a citizen. Therefore, the court finds, based on the limited amount of evidence before it, that either British Columbia or ACT was Bain's domicile at the time of his death. It is unnecessary for the court to decide which jurisdiction, in fact, was Bain's domicile because the court finds such an exercise ultimately unnecessary in its choice of law analysis on the liability issues.

The fourth and final contact of the section 145 analysis concerns "the place where the relationship, if any, between the parties is centered." The court finds this contact inapplicable because there was no direct relationship prior to the accident between any of the Plaintiffs and Honeywell. *See Crisman*, 748 S.W.2d at 278 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 145, comment on subsection (2), (1971)).

■ In weighing the criteria set forth in sections 6 and 145 of the Restatement, the court finds that both policy considerations[4] and factual considerations compel the conclusion that British Columbia has the most substantial relationship regarding

3. John Bain does state that based on conversations with his son he believes that Scott wanted to return to Alberta. Mr. Bain bases this belief on the fact that Scott Bain "established ... good relationships and friends in Alberta." *Id.* at 2. However, John Bain's belief about his son's future intentions is outweighed by the fact that Scott Bain declared himself to be an Australian citizen and a British Columbia resident on his application for a commercial pilot's license.

4. In the response to Honeywell's motion to apply the law of British Columbia, Plaintiffs' contend that the court should not apply the law of British Columbia "as British Columbia law contravenes Texas public policy." Pl.s' Response to Mot. to Appl. Law of British Columbia at 6. Plaintiffs argument is unconvincing. Plaintiffs support their argument by

citing a Texas Supreme Court case, *Gutierrez v. Collins*, that does in fact hold that "Texas courts will not enforce a foreign law that violates good morals, natural justice or is prejudicial to the general interests of our own citizens." *Gutierrez*, 583 S.W.2d at 321. However, Plaintiffs ignore the rest of the opinion that ultimately allows the application of Mexican law that "differ[s] in several aspects" to the laws of Texas. *Id.* In fact, the *Gutierrez* court held that the fact that Mexican law does not recognize pain and suffering as an element of damages and that the Plaintiff's potential damages will be substantially reduced does not render Mexican law violative of Texas public policy. *Id.* Moreover, plaintiffs have not shown how the laws of British Columbia violate "good morals [or] natural justice." *Id.*

the liability issues in this lawsuit. As stated above, two of the factors set forth in section 145 point to British Columbia. First, British Columbia is the place of the injury. Second, Bain resided in British Columbia at the time of the accident. Moreover, it is clear to this court that British Columbia has the greatest interest in the outcome of the case because the helicopter was based in British Columbia, the helicopter was registered in British Columbia and the helicopter crashed in British Columbia. The court agrees with Honeywell that there is not enough evidence that the allegedly-defective screw was installed in California. And even if the Plaintiffs could show that the allegedly-defective screw was installed in California, British Columbia still has the most significant relationship to the liability issue. *See Price v. Litton Sys., Inc.,* 784 F.2d 600, 604 (5th Cir.1986) (court found the place of injury and temporary place of residency of decedent the proper choice even if plaintiffs could show the wrongful conduct (a design defect) occurred in a different state); *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 485 (Tex.App.–Corpus Christi 1990, writ denied) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 175) ("In an action for wrongful death, the *local law of the state where the injury occurred determines the rights* and liabilities of the parties . . . .") (emphasis added).

After considering the evidence submitted in light of the contacts enumerated in section 145 of the Restatement, the court finds that British Columbia has the most significant relationship regarding the liability issues in this lawsuit. *See Price,* 784 F.2d at 604; *Trailways, Inc.,* 794 S.W.2d at 485 (factors should be weighed on a case-by-case basis).

## C. Damages Issues

Having decided that British Columbia has the most significant relationship to the liability issues, the court must now determine the proper law to apply to the damages issues. *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex.2000) (court bifurcated its discussion of liability and damages in its choice of law analysis); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) ("[t]he rights and liabilities of the parties *with respect to an issue in tort* are determined by the local law . . . which . . . has the most significant relationship to the occurrence and the parties . . . .").

The Texas Supreme Court recently held that in "[c]onsidering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important." *Torrington,* 46 S.W.3d at 849. In fact, under Texas law, the most important factor is not where the injury occurred[5] but rather where the plaintiff is domiciled.[6] *Id.* (quoting *Bryant v. Silverman,* 146 Ariz. 41, 703 P.2d 1190, 1194 (1985) ("[c]ompensation of an injured plaintiff is primarily a concern of the state in which plaintiff is domiciled")). Plaintiffs John and Peta Bain, the parents of Scott Bain, are domiciled in ACT and, as the court found above, Scott Bain was domiciled in either British Columbia or perhaps ACT at the time of the accident. The court finds that British Columbia has the most significant relationship to the damages issues for two reasons. First, Scott Bain resided in British Columbia at the time of the accident. Second, the Plaintiffs do not request the court to apply the law of ACT. The Plaintiffs urge the court to apply the law of Texas and Alberta. Because none of the Plain-

---

**5.** Subsection "a" of § 145(2).

**6.** Subsection "c" of § 145(2).

tiffs were domiciled in Texas or Alberta, the laws of those jurisdictions do not have the most significant relationship to the Plaintiffs with respect to damages issues. Furthermore, even though John and Peta Bain are domiciled in ACT, they make no request in their motion for the application of ACT law to the issues in this case. Therefore, the court will apply the law of the most likely domicile of Scott Bain, which is British Columbia.

### III. CONCLUSION

In the response to Honeywell's choice of law motion, the Plaintiffs requested additional time to research the law of whatever jurisdiction this court finds applicable in order to determine how the applicable law applies to Honeywell's pending motion for partial summary judgment. The court will grant the Plaintiffs' request because of the parties' uncertainty as to which law the court would apply and the difficulty in researching foreign law. The parties shall have forty-five additional days from the date of this order to brief this court on issues relevant to the pending motion for partial summary judgment, including whether British Columbia law allows recovery for (1) John and Peta Bains' claims for noneconomic losses, including mental anguish and loss of companionship and society, (2) John and Peta Bains' and the estate's claims for loss of decedent's future earnings, and (3) the estate's claims for the decedent's pain and suffering.

Upon consideration of the written submissions of the parties and applicable law, the court is of the opinion that Honeywell's motion to apply the law of British Columbia should be GRANTED, Plaintiffs' motion for application of Texas and Alberta law should be DENIED, and Plaintiffs' request for extension of time to respond to Honeywell's motion for partial summary judgment should be GRANTED, allowing both parties forty-five days from the date of this order to brief the above-described

damages issues and for the Plaintiffs to respond to the pending motion for partial summary judgment.